[Civ. No. 181. Fourth Appellate District.—April 10, 1931.]

PACIFIC NATIONAL BANK OF SAN FRANCISCO (a Corporation), Respondent, v. CORONA NATIONAL BANK (a Corporation) et al., Appellants.

Walter S. Clayson and Hewitt, McCormick & Crump for Appellants.

C. H. Sooy for Respondent.

BARNARD, P. J.—In this action the plaintiff seeks, under the theory of an involuntary trust, to recover from the defendants a sum of money which was received by the defendant Corona National Bank and which it is claimed it ought not, in equity and good conscience, to retain. Briefly stated, the facts are as follows: On March 12, 1925, one James A. McEniry became vice-president of the Corona National Bank. On that same day, the president and cashier of that bank each signed several blank stock certificates which were intended to be issued in place of a certificate previously issued to another stockholder in the bank. While these certificates were signed by the proper officers of the bank, they were not detached from the regular stock certificate book of the bank, and were not filled in either as to names, dates or numbers of shares. One of these certificates was number 214. It is conceded that the said James A. McEniry fraudulently removed said stock certificate No. 214 from the certificate book, and fraudulently filled in the same so that it purported to represent that 142 shares of stock in the bank, being a controlling interest therein, had been issued to him. He was, in fact, the owner of only five shares of stock in said bank. On March 31, 1925, through said McEniry, as vice-president, the Corona National Bank opened an account with the plaintiff with a draft for $5,000. Two days later, McEniry appeared at the office of the plaintiff in San Francisco, showed the president of that bank this certificate No. 214, purporting to be 142 shares of stock in the Corona National Bank issued in his name, and stating that he wished them to know that he owned the controlling interest in the Corona bank and that the same was not hypothecated; he left the certificate with the plaintiff bank for safekeeping, taking a receipt therefor. This certificate bore the genuine signatures of the president and cashier of the Corona National Bank, and appeared regular on its face except that it did not bear the corporate seal of the bank. On April 14, 1925, McEniry represented

to the Corona National Bank that he personally had a credit in the Pacific National Bank for $10,000, and on that day he made a false entry in his account with the Corona bank, crediting himself with $10,000 and charging the Pacific National Bank with that amount. This transaction was entirely fictitious, as at that time he had no credit with the Pacific National Bank and no arrangement for borrowing any money from them had been made. He immediately checked out this $10,000 from his account in the Corona bank. On April 30, 1925, McEniry again appeared at the office of the plaintiff in San Francisco and after representing that he owned the controlling interest in the Corona National Bank, and after falsely representing the condition of that bank, arranged with the president of the Pacific National Bank to borrow $10,000, for which he gave his individual promissory note. As security therefor, he indorsed in blank and delivered to the plaintiff the purported certificate for 142 shares of stock in the Corona National Bank, together with his individual general pledge agreement, pledging to the Pacific National Bank all moneys and securities belonging to him at any time in possession and control of that bank. After these papers were executed, McEniry requested that the $10,000 so borrowed be deposited to the credit of the Corona National Bank, in the plaintiff bank, which was done. Subsequently, the Corona National Bank withdrew $9,500 of this amount. Later, the Corona National Bank closed its doors and still later, the First National Bank of Corona took over all its assets under a written agreement to pay all of its obligations. This action followed, to recover the $9,500 paid out of the $10,000 loan to McEniry.

The original complaint contained two counts, the first alleging, in substance, that the defendants were indebted to the plaintiff for $9,500 for money loaned by the plaintiff to the Corona National Bank. The second count was in the form of an action for damages to recover $9,500 by reason of fraud on the part of the Corona National Bank in obtaining a loan from the Pacific National Bank, alleging the circumstances under which the loan was secured, it being drawn upon the theory that McEniry, throughout the transaction, was acting as the agent of the Corona bank. At the conclusion of the trial, in order to conform to the proof, the court

permitted an amendment to the complaint, which sets forth a cause of action. for money had and received. The court gave judgment for the plaintiff, from which judgment this appeal is taken.

It is a general principle of equity that one who gains a thing by fraud is, unless he has some other and better right thereto, an involuntary trustee of the thing gained for the benefit of the person who would otherwise have had it (Civ. Code, sec. 2224). A further rule of equity has also been made statutory in this state through section 2243 of the Civil Code, which reads as follows: "Everyone to whom property is transferred in violation of a trust, holds the same as an involuntary trustee under such trust, unless he purchased it in good faith, and for a valuable consideration."

The first question here presented is whether or not the appellant, as the transferee of the credit obtained by fraud by McEniry from the respondent, parted with a valuable consideration therefor. There is very little dispute as to the facts, but the question of law presented is a close one. The trial court found in this regard as follows: "The said Corona bank neither parted with anything of value nor gave anything of value to said Pacific National Bank, or to the said McEniry, or to any other person for said sums of $7500 and $2000 so as aforesaid paid to and received by it."

This finding is strenuously attacked as not supported by the evidence, it being contended that a consideration appears from the fact that McEniry was previously indebted to the Corona bank through his fraudulent transaction with them on April 14th.

Upon the question of whether an antecedent debt may be considered as a valuable consideration for the transfer of funds or property held in trust, Pomeroy's Equity Jurisprudence (3d ed., secs. 748 and 749) points out that the various ways of using such a debt—such as securing it, postponing its payment, and discharging it, have so clouded and entangled the subject that a great conflict of judicial opinion has ensued, but says that in perhaps a majority of the states, such an antecedent debt is regarded as a good consideration for such a transfer. This authority further points out that upon principle it should not be so regarded where the transferee parts with nothing, gives up no right,

and puts himself in no worse plight than he was in before. In this state, it has been held, under circumstances different from those prevailing here, that a pre-existing debt is a good consideration. (*Schluter* v. *Harvey,* 65 Cal. 158 [3 Pac. 659]; *Frey* v. *Clifford,* 44 Cal. 335.) It has also been held that where an action to establish a trust is defended on the ground that the transferee was a taker for value, it must affirmatively appear that value was paid. (*Lezinsky* v. *Mason Malt Whiskey Distilling Co.,* 185 Cal. 249 [196 Pac. 884].) It has further been held that in such a case, a plaintiff is entitled to judgment if the evidence leaves the judicial conscience in doubt as to whether a consideration was paid by the defendant. (*Chapman* v. *Hughes,* 134 Cal. 641 [58 Pac. 298, 60 Pac. 974, 66 Pac. 982].)

No actual, as distinguished from a presumptive, discharge of a pre-existing debt, either in whole or in part, is here shown. No receipt was given to McEniry by the Corona bank, nor was any credit given to him in any manner upon the books of that bank or otherwise, either at the time the proceeds of the loan from the Pacific National Bank were received, or later. Nothing was done by the Corona bank at any time after this loan was negotiated by McEniry, except to take and use the money. It is apparent from this and from the general circumstances, that the Corona bank did not at the time regard it as a payment on a pre-existing indebtedness, or any kind of a new credit. In fact, it appears that at that time they did not know that McEniry was indebted to them and apparently did not discover that anything was wrong until many weeks later, although possibly they should have discovered it, since they were notified by the Pacific National Bank that a $10,000 credit had been placed to their account on April 30th, whereas they had supposed they had obtained such a credit on April 14th. It would seem that what really happened was that, instead of accepting this amount as a credit on a pre-existing indebtedness, they mistakenly assumed this $10,000 was an old credit of that amount which McEniry had pretended to give them on April 14th, and they accepted and used it under the idea that it was such. Appellants did not change their position upon receipt of this credit, so far as anything they did is concerned. Any possible change would only be by operation of law, in that they could not bring suit while they held

the money. Most, if not all, of the cases along this line involve a change of position that arises from an affirmative act such as canceling a debt, releasing a mortgage, and the like. There would appear to be considerable difference between definitely accepting a payment on a pre-existing indebtedness, giving credit therefor and discharging a debt to that extent, and such a situation as this where no credit was given, and no debt was discharged, but where a credit is taken upon the mistaken belief that it is an entirely different one. This transferee had put itself in no worse plight than it was in before, but had merely acted on the mistaken belief that it was entitled to the credit because of the prior happening. They accepted a credit fraudulently obtained by McEniry, believing it to be a different one previously transferred to them by him. In effect, the appellants are not now saying that they credited this amount on a pre-existing debt in good faith, having given up something, canceled a debt, and changed their position, but in reality they are saying that at the time they received the money, they mistakenly assumed this credit to be the one McEniry had previously pretended to give them. And they are further saying that, having subsequently discovered that he was indebted to them and had committed another fraud against them, they are now entitled to hold what they took through their mistake. They now desire to apply what was obtained by fraud from respondents, and later mistakenly used by them, to cover a loss occasioned by a previous fraud suffered by them at the hands of the same party, although no new credit was given by them and no change in their position occurred after the fraud was perpetrated upon the respondent bank. We think the status of the parties is to be governed by the situation existing at the time the credit was received by appellants, and that at that time appellants received and used this credit under a mistaken belief that it was one previously transferred to them, and that it was not then taken with the intention that it should be a payment upon a pre-existing indebtedness. Not having been so taken at the time, it should not now be so treated. The court's finding that nothing of value was paid or parted with, in obtaining the credit referred to, is sustained by the evidence.

In point of fact the appellants have received the benefit of the fraud practiced upon the respondents by Mc-

Eniry. Although they subsequently discovered that they also had been previously defrauded and deceived by him, this, in itself, would not give them a right to use the credit obtained by him through the second fraud, to recompense them for the loss suffered through his first fraud. This would especially seem to be true under another familiar rule of equity, which is now found in section 3543 of the Civil Code: ''Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer.'' The presence of the seal of the corporation upon this certificate of stock was not essential to its validity. (*City Street Improvement Co.* v. *Laird,* 138 Cal. 27 [70 Pac. 916].) It appears that the signatures of the officers of the corporation upon the certificate were genuine, and it does not appear that the officers did not have full authority to issue it. The worthlessness of the stock came not from improper signatures, nor from lack of authority, but from the fact that the blanks left therein were wrongfully filled out. This was made possible by the negligence of the bank's president and cashier in signing the certificate in blank and permitting it to remain where it could be so fraudulently used by McEniry to obtain the loan here involved from the respondent bank. Had the certificate been properly taken care of after it was signed, this loan would never have been made. Since one of two innocent parties must suffer, it seems more equitable that the appellants should bear this loss, which occurred through, and was made possible by, the negligence of the Corona National Bank.

 Appellants' next contention is that the action is barred by the statute of limitations. It is their theory that the action being for money had and received, the essential basis thereof is an implied contract, and that the action is not ''based on fraud as a substantive cause of action''. Appellants rely particularly on the case of *Gibson* v. *Henley,* 131 Cal. 6 [63 Pac. 61]. However, in that case the court held that the defendant neither participated in nor received the benefit from the transaction, and that the only basis of his liability was contractual. It may be conceded that, ordinarily, the period of limitation for an action involving an implied contract is two years. (16 Cal. Jur. 467, and

cases cited.) However, the form of the action is not controlling in determining the applicability of the statute of limitations. (*Union Tool Co.* v. *Farmers etc. Nat. Bank,* 192 Cal. 40 [28 A. L. R. 1417, 218 Pac. 424]; *Newport* v. *Hatton,* 195 Cal. 132 [231 Pac. 987].) In *McDonald* v. *Reich & Lievre, Inc.,* 100 Cal. App. 736 [281 Pac. 106, 107], the court said:

"No doubt the form of the action is one upon an implied contract, but the criterion for determining the particular statute of limitations applicable, is not the form of the action, but the substance of it and the nature of the right, the violation of which creates the right of action. This is particularly true in those jurisdictions where common-law forms of action have been abolished. (Citing cases.)

"The substance and nature of the right which gave respondent a cause of action in this case was not contract. Appellant never in fact and reality agreed to pay back the money received for the stock. The contract implied by law is merely a fiction of law and does not, therefore, go to the substance of this cause of action. A fiction of law is introduced to promote justice, not to work a wrong contrary to the real truth and substance of the thing. (*Hibberd* v. *Smith,* 67 Cal. 547, at 561 [56 Am. St. Rep. 726, 4 Pac. 473, 8 Pac. 46].) If all the facts of this case had been set forth in the complaint in detail instead of recourse having been had to the common count, it would readily have appeared that plaintiff's cause of action was based upon either fraud or mistake."

While, in such a case as this, it may be considered that there was an implied contract to return the money, the real basis of the action is the fact that the circumstances constitute an involuntary or constructive trust which arises out of the fraud involved. The Corona bank is sued as having received the benefit of the money obtained by another's fraud. In such cases, it has been held that subdivision 4 of section 338 of the Code of Civil Procedure applies (*Earhart* v. *Churchill Co.,* 169 Cal. 728 [147 Pac. 942]; *Tully* v. *Tully,* 137 Cal. 60 [69 Pac. 700]; *Calkins* v. *Calkins,* 63 Cal. App. 292 [218 Pac. 611].) Where the action is in reality based upon fraud, it has been held that the three-year period applies. (*City Sav. Bank* v. *Enos,* 135 Cal. 167

[67 Pac. 52]'; *Unkel* v. *Robinson,* 163 Cal. 648 [126 Pac. 485].) In the last case cited, the court said: "Appellant's cause of action is based on section 2224 of the Civil Code, which declares that 'one who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust or other wrongful act is, unless he has some other and better right thereto, an involuntary trustee of the thing for the benefit of the person who would otherwise have had it.' . . . What he seeks is simply to establish a constructive trust in his favor on the ground of fraud, and to have the property sold and from the proceeds to have refunded him the moneys fraudulently obtained from him and invested in the property. . . . Section 338 is, however, clearly applicable, as fraud is the gravamen and very essence of the cause of action set out in this complaint, and the relief sought is on the ground of fraud under the cited section of the code which provides for relief on that ground."

While it is true that the cases cited, and in which this rule as to the statute of limitations is applied, were cases brought directly against the party committing the fraud, no good reason appears why the rule should be any different where the action is brought against a transferee of the party who obtained the money by fraud. Under circumstances where a transferee may not in equity and good conscience retain money as against the person from whom it is fraudulently obtained by a different party, the nature of the entire action is governed by the situation as existing between the party defrauded and the party committing the fraud. If the action is not barred as against the party committing the fraud, it should not be held barred as against his transferee. By the use of the common count in this action, the legal fiction of an implied contract is employed, but if all the facts had been set forth in detail in the complaint, it would have been readily apparent that the action is based upon receiving the benefits of a fraud. Since "fraud is the gravamen and very essence of the cause of action set out in the complaint, and the relief sought is on the ground of fraud", we think subdivision 4 of section 338 of the Code of Civil Procedure applies, and the action, having been filed within three years, was not barred. If it was not barred as to appellant Corona National Bank and

its receiver, it follows that it was not barred as to the First National Bank of Corona, under its written agreement.

The judgment is affirmed.

Marks, J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 6, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 8, 1931.