[Civ. No. 5143. Third Appellate District.—July 24, 1934.]

GEO. W. ROSS, Respondent, v. PRUDENTIAL GUARANTEE BUILDING AND LOAN ASSOCIATION (a Corporation), Appellant.

S. C. WARNER, Respondent, v. PRUDENTIAL GUARANTEE BUILDING AND LOAN ASSOCIATION (a Corporation), Appellant.

Breed, Burpee & Robinson for Appellant.

George F. Jones for Respondents.

THOMPSON, J.—The above-entitled cases were consolidated for the purpose of trial. Separate findings were adopted in each case and separate judgments were rendered against the defendant. The complaints were drawn in the form of *assumpsit*. They are for money deposited with an agent of the defendant Prudential Guarantee Building and Loan Association. The agent failed to account to the association for any of these deposits and appropriated them to his own use. Judgments were rendered in favor of the plaintiffs on the theory that the defendant negligently permitted the local agent to hold himself out as its authorized employee with authority to accept deposits for the associa-

tion, by permitting passbooks to remain in his possession, to which certificates of the company were attached, signed by the vice-president and secretary thereof. From these judgments the defendant has appealed.

The California Guarantee Building and Loan Association was incorporated in 1923, with its principal place of business in Santa Clara County. In 1927, it was merged with the Home Guarantee Building and Loan Association of Contra Costa County and continued to operate under the original name. In 1931, the name of the corporation was changed, in the manner provided by law, to Prudential Guarantee Building and Loan Association, with its principal place of business at Oakland. During all of the time involved in this litigation it was the same corporation, notwithstanding the fact that its name had been changed. It appears, however, that the California Guarantee Building and Loan Association suspended active operation of its business for about a year, its license having been revoked by the building and loan commissioner November 18, 1930, but it resumed business under the same articles of incorporation which had been kept in force. Its name was formally changed by a resolution of its directors duly passed on October 21, 1931, to Prudential Guarantee Building and Loan Association. During the entire time since the merger in 1927 until September, 1932, J. L. James was employed by defendant Building and Loan Association as its agent at Oroville. License certificates were issued to him as agent and solicitor by the building and loan commissioner of California as provided by law. He maintained an office at Oroville, advertising, with the knowledge of the defendant, in the newspapers and by means of signs displayed in his office window and otherwise, that he was the "Local Manager" of the association. Prior to the time of the change of name of the association, James was furnished with investment passbooks, upon the fly-leaves of which were pasted certificates which were previously signed by the vice-president and secretary of the association, assuming liability and vouching for the amount of the original deposit "together with any and all additional sums which may be paid to it hereunder, as evidenced by the pass-book hereto attached", and promising to pay the holder thereof, upon certain terms and conditions therein specified, all money so deposited, together with

interest. These certificates were termed "Thrift Investment Certificates". When a depositor opened an account with the agent, the latter entered in the blank spaces left therefor in these certificates the name of the depositor, the amount of his original deposit, the rate of interest to be paid and the date of the certificate. The passbooks were arranged with columns appropriately headed for the entry of the dates of deposits, the principal amounts of deposits, the amounts of dividends or accumulated interest, the sums withdrawn and the balance of the accounts. In the course of his employment many depositors were thus secured at Oroville in behalf of the association by Mr. James. He testified in that regard: "Q. Approximately how many books of this kind did you issue in this community? A. I don't remember exactly, but several. Q. Would you say as many as fifteen or twenty? A. Possibly, yes sir. Q. And did you send some money collected in this manner to the California Guarantee Building and Loan Association? A. Yes sir. . . . I don't remember (the amount) exactly, the loan company has the record."

December 27, 1928, the plaintiff Ross deposited with solicitor James at his office in Oroville the sum of $900. A passbook was then issued to Ross with that sum credited to his account with the California Guarantee Building and Loan Association. James filled in the certificate which was pasted on the fly-leaf of that book with the depositor's name, the amount of deposit and a promise to pay quarterly thereon six per cent interest per annum. The date of opening the account was inserted. ·The certificate had been previously signed by F. C. Watson, as vice-president, and Frederick H. Clark, as secretary of the association. The passbook was delivered to the depositor Ross. On July 8, 1931, a further deposit of $1200 was credited to his account in the passbook. Quarterly throughout the entire period of time during which the account existed, until July 6, 1932, the amount of accumulated interest was credited in the book, and corresponding sums were recorded as withdrawn. James paid the interest to the depositor. This left a balance to the credit of Mr. Ross on July 6, 1932, of the principal sum of $2,100. Each entry in the passbook was verified by the initial of the agent.

Likewise, a similar passbook was issued by James to the plaintiff Warner on April 7, 1930, showing five separate deposits of principal sums, aggregating $4,868.65. Items of interest were periodically credited in the passbook in the total sum of $427.79. Several items of withdrawals were charged against the depositor in the passbook, aggregating the sum of $1430.73. This left a balance to his credit on August 27, 1932, of $3,865.71. Each of these entries in the passbook is certified by the initial of the agent James.

In September, 1932, J. L. James was discharged of his agency by the appellant. On October 8, 1932, the attorneys for the defendant in these actions wrote to the plaintiff Warner, notifying him that the Prudential Guarantee Building and Loan Association had discovered that J. L. James had been wrongfully issuing passbooks and had been illegally procuring money from depositors under false representations, among which transactions his account was included, and that the association repudiated all responsibility therefor and denied all liability for the account as shown by his passbook. A similar letter was written to the plaintiff Ross on December 8, 1932. These letters contained the first intimation that either of the plaintiffs had that James was not recognized by the defendant as its accredited agent and solicitor duly authorized by it to represent the association in that capacity at Oroville.

Separate suits in *assumpsit* were substantially brought by the plaintiffs against the defendant for money had and received, together with the unpaid interest thereon, as shown by their respective passbooks, on the theory that James was either the duly accredited agent of the defendant in those transactions, or that the negligence of the association warranted them in believing they were dealing with its duly authorized agent. The association answered these complaints by denying the material allegations thereof. The cases were consolidated and tried by the court sitting without a jury. Findings favorable to the plaintiffs on all the material issues were adopted in each case. Separate judgments were rendered accordingly. From these judgments the defendant has appealed.

On appeal the defendant contends that, (1) the agent was without authority to bind the association and that his acts were limited by law and by rules promulgated by the

building and loan commissioner, (2) the agent's employment had terminated prior to the performance of certain acts of his upon which the plaintiffs rely for judgment, (3) the agent had no authority to fill in the blank spaces of the signed certificates attached to the passbooks, (4) the ostensible agency of James was not proved, (5) the evidence fails to show that the certificates attached to the passbooks were authorized by the officers of the association, (6) the defendant was not authorized to transact business as a building and loan association at the time certain deposits were credited in the passbooks by James and that the necessary action to rescind the contracts represented by the passbooks could not be maintained for the reason that no notice of rescission or offer to restore the passbooks was first served by the plaintiffs pursuant to section 1691 of the Civil Code.

■ *Assumpsit* is a proper action in which to recover money obtained by a corporation or its authorized agent by means of false or fraudulent representations, under which circumstances the law implies a promise to repay the funds. (*Pollak* v. *Staunton*, 210 Cal. 656 [293 Pac. 26, 29]; *Long* v. *Harrison*, 113 Cal. App. 321 [298 Pac. 148]; 17 Cal. Jur. 616, sec. 12.) In the Pollak case, *supra*, it is said: "As between the corporation or its agents receiving payment for stock which is illegally issued and void, and the purchaser who in his dealings with the corporation persists in the notion that the stock possesses some validity, the corporation should not be privileged to take advantage of his error and retain money for which, by reason of its own violation of law, it gives nothing in return. . . . The action for money had and received is based upon an implied promise which the law creates to restore money which the defendant in equity and good conscience should not retain. The law implies the promise from the receipt of the money to prevent unjust enrichment."

In the Long case, *supra*, which was an action for money had and received, it is said: "The main contention of the appellant in this action is that there was a contract between plaintiff's assignors and the defendants under which the money named in the first count of the complaint was paid to them, and there having been no rescission of the contract, an action for money had and received will not lie. This contention is without merit. . . . This kind of action to

recover back money which ought not in justice to be kept is very beneficial, and, therefore, much encouraged.''

The appellant, however, insists that the foregoing principle does not apply except when the defendant ''has been enriched'' by the acquisition of the money. It is contended the defendant in the present cases was not enriched since the money did not reach its possession. But when a duly authorized agent profits by securing funds by means of fraud or misrepresentation which are chargeable to the principal on account of his negligence, the principal will become liable whether the money actually reaches his possession or not.

■ Neither a demand for the return of the money nor notice of rescission was necessary as a prerequisite to the maintenance of these suits under the circumstances of this case. The defendant wrote to the plaintiffs prior to the commencement of the actions repudiating the contracts represented by the certified passbooks and denying its liability for the obligations of indebtedness incurred thereby. A demand for a return of the money was useless and therefore unnecessary. It has been held that notice of rescission is not necessary ''where the defendant is unable or positively refuses to rescind the transaction, or it is certain that the offer, if made, 'will be refused''. (4 Cal. Jur. 769, sec. 9.) ■ An offer to restore the passbooks as a prerequisite to the maintenance of these actions under the provision of section 1691 of the Civil Code was not necessary for the reason that this is not an action of rescission, and because the appellant previously repudiated its liability and denied the existence or validity of the contract created by the opening of the thrift investment accounts with plaintiffs, thus asserting that the passbooks were valueless. It is not necessary to return a thing prior to the commencement of an action which possesses no recognized value.

■ It did not constitute prejudicial error for the court to admit in evidence the passbooks over the objection of the defendant that their authenticity had not been established chiefly because it was not specifically shown that the individuals whose names appear on the certificates attached thereto as vice-president and secretary, respectively, were actually the officers of the association at the times these passbooks were issued to the plaintiffs. Their authenticity

appears to have been sufficiently established. Mr. James, who issued them as the agent of the association, testified that those particular passbooks and fifteen or twenty other similar ones with the officers' names attached thereto were delivered to him by the California Guarantee Building and Loan Association to be used by him in procuring investment accounts. This fact is not disputed. They contained printed statements in the following language: "California Guarantee Building and Loan Association, Oakland, California." Mr. Clark, whose name is attached to the certificates on these passbooks, acknowledged the genuineness of his signature which appears on both instruments and admitted that he had been secretary of the association continuously since 1928. In response to the question as to whether the name of R. C. Knight, which appears on the certificate as vice-president, was genuine, he said: "Apparently. . . . I would say so." It also appears from the certified copy of the certificate of increase of capital stock of the California Guarantee Building and Loan Association shortly before the first passbook was issued in 1928, that the names of all the officers appearing upon the certificates attached thereto were members of the board of directors, and that Clark was then its secretary. We think the authenticity of these passbooks was sufficiently established.

The appellant contends that the local agent's authority was limited by the provisions of the by-laws of the association, and by the conditions printed on the back of his license certificates which were issued by the building and loan commissioner of California, purporting to be rules which were promulgated by the commissioner pursuant to law. Article IV, section 4, of the association's by-laws do provide in part: "No agents shall collect the funds of the Association, except such as must accompany the subscriptions for shares *or investment certificates* of the Association, unless authorized by the Association in writing so to do."

The rules purported to have been adopted by the commissioner pursuant to law are printed on the back of the license certificates which were issued by the commissioner to Mr. James as agent of the association. Among these rules the following provisions appear:

"The license permits the holder to solicit subscriptions for shares of stock, shares of membership, *and certificates of in-*

*vestment*, . . . Upon securing subscriptions for shares or certificates a solicitor may collect and receipt for the entrance fee *and not more than one* periodical installment. . . . "

Our attention is not called to any evidence that the foregoing rule was ever adopted or promulgated by the commissioner as required by law or otherwise. Moreover, the payments of money which were credited on the passbooks do not purport to have been *"installments* upon investment certificates". Each sum which is credited to the plaintiffs upon their respective passbooks appears to have been an original and independent investment with the association.

It was evidently the custom of the association to issue to its agent at Oroville blank "Thrift Investment Certificates," signed by the vice-president and secretary of the company and attached to passbooks which were arranged in columns, like the ordinary passbook of a modern bank, to enable the agent to enter original and subsequent principal payments. It would seem to be unjust and absurd to hold that under a purported rule of the commissioner, only the collection of the initial payment which is credited on the passbook will be deemed to have been authorized, on the theory that it is "one periodical installment". It would be an unjust and unreasonable construction of the language which would relieve the association of all liability for subsequent principal payments which are credited by the agent on the passbooks. Each principal payment may reasonably be deemed to be an independent investment. There is nothing in the form of the certificate attached to the passbooks which indicates that it was intended to be an *installment* certificate. No payments of installments are provided for. █ Fifteen or twenty of these passbooks were delivered to the agent in that very form. He took other subscriptions in that same form and remitted the money received in other transactions to the association. The defendant ratified and encouraged that method of handling accounts with its customers. It must be deemed to have authorized it. It will therefore be estopped from now denying its liability upon the claim that the agent exceeded his authority in crediting and collecting more than the initial deposit which appears on the passbooks.

■ Regardless of the alleged limitation of authority conferred upon the agent James by the by-laws or rules adopted by the commissioner to deliver the passbooks or receive the payment of more than "one periodical installment" from an investor, there is evidence in this case which will support the assumption that the appellant permitted and encouraged its agent to deliver the passbooks and collect the payments in that manner in conformity with a custom or usage of the association. It has been held that an organization will be estopped from denying its liability for money secured and misappropriated by its agent acting in excess of his ordinary authority, when it appears that his conduct in so doing was in accordance with a custom which was established and followed with its knowledge and approval, either express or implied. (*Carpy* v. *Dowdell*, 115 Cal. 677 [47 Pac. 695]; *Nordin* v. *Eagle Rock State Bank*, 139 Cal. App. 584 [34 Pac. (2d) 490].) This principle of law is expressed in the syllabus of the Carpy case, *supra*, as follows:

"Where the cashier of a bank, to the knowledge and with the assent and tacit approval of the directors of the bank, had for many years permitted wine mortgaged to the bank by the same and other persons to be sold to responsible third parties, under contracts similar to the one in controversy, the bank cannot repudiate the act of the cashier in authorizing the contract in controversy, but his act is the act of the bank."

That principle was involved in the Nordin case, *supra*, although it was not determinative thereof. It was said in that case that in the absence of a custom or usage to the contrary, conceding the rule of banking law, as announced by the text of Morse on Banks and Banking (5th ed.), page 381, that, "Where money is offered for credit on a deposit account it is clear that it should not be accepted away from the bank. The bank does not contemplate any such method of receiving deposits but has provided an entirely different system"; and as it is stated in Paton's Digest, 1926, volume 1, page 296, paragraph 1778, "Until the money [which is paid to an officer of the bank outside of the bank] is actually put in the bank's possession at the bank, the cashier is agent of the depositor and not of the bank, and the bank is not liable if the money is not in fact paid over to it."

When the money is accepted by an officer of the bank outside of the bank in accordance with a rule of the bank established and followed with its knowledge, either express or implied, the bank will become liable. Under such circumstances a bank may not deny its liability on the ground that the agent secured the deposit or collected the money by conduct in excess of his authority. The foregoing principle appears to be applicable to the facts of this case. In the present case the building and loan association authorized the practice of permitting the agent to fill in the signed certificates of investments and allowed the delivery of the passbooks together with the collection of subsequent payments of principal sums to be credited to the customer. The association may therefore not now complain of this excess of authority.

 The appellant contends that the evidence adduced in this case fails to show that J. L. James was the ostensible agent of the association. Section 2300 of the Civil Code defines an ostensible agency in the following language: "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him."

We are of the opinion the evidence satisfactorily fulfills the foregoing definition. Certainly the plaintiffs must have believed that James was the local agent of the association with authority to open investment accounts with the company and issue certificates of investment, or they would not have deposited their money with him. It does appear that for years he had maintained an office at Oroville equipped for that very business and in which he advertised himself with the knowledge of the association, as its "Local Manager". The California Guarantee Building and Loan Association was advertised in the local newspapers with J. L. James as local manager thereof. Signs were displayed in the window of the office at Oroville. The plaintiffs saw these advertisements and were induced thereby to make their investments. Mr. James made the entries of their deposits in passbooks with the attached certificates in the names of the depositors, with the signatures of the vice-president and secretary of the association affixed thereto. The passbooks, which were in the hands of James, also had attached in large display type, "California Guarantee Building and

Loan Association, Oakland, California". These passbooks were properly filled out and handed to the depositors. The association had dealt with James as its local agent for several years. Certainly it was charged with knowledge of the fact that he represented it as its agent at Oroville. During all of that time, at least one of its officers, secretary Clark, knew that James was supplied with passbooks with the name of the vice-president and his own name attached to the certificates. Even after the business was revived and the name changed to Prudential Guarantee Building and Loan Association, Clark remained as the secretary of the organization. He must have known of the custom permitting James to issue these passbooks in that form. James continued to act as its agent. Mr. Clark testified that the passbooks "undoubtedly came from the office of the corporation". ▮▮ We are of the opinion the court was justified in assuming that the association was negligent in permitting James to retain and use these passbooks since the association must have known of the practice. Even though the association did not deliberately furnish its agent with these passbooks with the signed certificates attached thereto, it may become liable for negligently leaving such signed certificates where they could be secured and used by an unauthorized agent. In the case of *Pacific Nat. Bank* v. *Corona Nat. Bank,* 113 Cal. App. 366 [298 Pac. 144], in which a hearing by the Supreme Court was denied, it was held in a suit for money had and received that the defendant bank was liable for a $10,000 loan procured by false representations on the part of its vice-president, who wrongfully took possession of blank certificates of stock which had been previously signed by the president and cashier of the bank and carelessly left where the vice-president could secure them and fill in the blank spaces so as to falsely represent that he was the owner of 142 shares of the capital stock of the bank. This false certificate was then presented to the plaintiff bank to establish his credit and secure the loan of $10,000. Upon trial of the cause the defendant bank was held liable for the amount of the loan. On appeal that judgment was affirmed. The court said regarding the liability of the defendant bank:

"It appears that the signatures of the officers of the corporation upon the certificate were genuine, and it does not

appear that the officers did not have full authority to issue it. The worthlessness of the stock came not from improper signatures, nor from lack of authority, but from the fact that the blanks left therein were wrongfully filled out. This was made possible by the negligence of the bank's president and cashier in signing the certificate in blank and permitting it to remain where it could be so fraudulently used by McEniry to obtain the loan here involved from the respondent bank. Had the certificate been properly taken care of after it was signed, this loan would never have been made."

In support of the judgment the respondent cites a number of authorities in which the doctrine contained in section 3543 of the Civil Code is announced, that "Where one of two innocent parties must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer." Among the cases which are cited upon that principle are *Shirey* v. *All Night and Day Bank,* 166 Cal. 50 [134 Pac. 1001]; *Schultz* v. *McLean,* 93 Cal. 329 [28 Pac. 1053]; *Pacific Nat. Bank* v. *Corona Nat. Bank,* 113 Cal. App. 366 [298 Pac. 144]. These cases were all founded upon fraud which was exercised by a third party. The doctrine announced in these causes appears to be applicable to the facts of this case. As we have heretofore said, the plaintiffs were not guilty of negligence in assuming from the circumstances that James as the agent of the association had the authority to accept their deposits and issue the passbooks. Nor were they guilty of negligence in failing to examine the by-laws of the organization or the purported rules promulgated by the building and loan commissioner. If they had previously examined Article IV, section 4, of the by-laws or the printed rules upon the back of the "Agent's and Solicitor's License" in his possession, they would have discovered nothing, as we have heretofore said, to prohibit the agent from accepting their deposits and issuing the passbooks. Even though the plaintiffs had examined the state records and discovered that the operations of the California Guarantee Building and Loan Association had been suspended for the period of time from November 18, 1930, to October 21, 1931, they would have ascertained that the articles of incorporation were kept in force and that the same association thereafter resumed business under the changed name of Prudential Guarantee Building and Loan

Association and that the same local agent continued to act for it at Oroville. On the contrary, it does appear that the negligence of the appellant and its officers did lead the plaintiffs to believe that the agent possessed the authority which led them in good faith to assume they were dealing with the appellant according to its authorized custom and practice.

The judgments are affirmed.

Plummer, J., and Pullen, P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 13, 1934.