[Civ. No. 12447.   First Dist., Div. Two.   May 20, 1943.]

UNION OIL COMPANY OF CALIFORNIA (a Corporation), Appellant, v. CHARLES G. JOHNSON, as State Treasurer, etc., Respondent.

L. A. Gibbons, Jerry H. Powell and Douglas C. Gregg for Appellant.

Robert W. Kenny, Attorney General, H. H. Linney, Assistant Attorney General, and Adrian A. Kragen, Deputy Attorney General, for Respondent.

DOOLING, J. pro tem.—Plaintiff is in the business of producing and refining crude oil and selling the refined products.

In the course of its business it both produces and purchases crude oil, intermingles the two and refines the oil so commingled.

Between August 1, 1933, and June 30, 1935, plaintiff produced 22,681,553 barrels of crude oil and purchased 24,197,006 barrels. Of the refined products of the commingled oil so purchased and produced plaintiff used and consumed in its own business about 4 per cent. The State Board of Equalization determined that a sales tax was due from plaintiff on that proportion of its refined products so used by itself which was equal to the proportion that the purchased crude oil bore to the total crude oil refined. Plaintiff paid this tax under protest and sued to recover it back. From a judgment denying recovery this appeal is taken.

Under the California Retail Sales Tax Act (Stats. 1933 p. 2599; Deering's Gen. Laws, 1937, Act 8493) plaintiff gave to the sellers from whom it purchased crude oil the certificates, provided for in section 17 (Id. p. 2604), that such crude oil was purchased by plaintiff for resale. As a result no sales tax was paid thereon at the times of such purchases.

The theory on which the tax was collected is that by intermingling the purchased oil with the oil produced by itself and refining the mixture plaintiff used and did not resell a portion of the crude oil purchased under such certificates. That this is true as a matter of fact plaintiff does not dispute nor, if the tax was properly assessed as a matter of law, does it question the propriety of the manner of its calculation. ■ Plaintiff's sole contention on this appeal is that because it *intended* to use only the refined products of the crude oil produced by itself and *intended* to resell all of the refined products of the crude oil which it had purchased from others, such intention should be given controlling weight and no tax collected from it for the portion of the refined products of the oil purchased by it which it did in fact use and consume.

To simplify its claim, plaintiff admits that if the crude oil purchased by it had been separately refined and it had used a portion of such refined products it would be liable for a tax thereon, but it denies that where the refined products are produced from a mixture of such purchased oil with oil produced by itself it is liable for a tax upon the part of the refined products which are produced from purchased oil.

We do not believe that plaintiff can escape the tax by any

such refinement of reasoning. The incidence of the tax is made to fall on the purchaser by reason of the fact that he consumes and does not resell property purchased for resale. Plaintiff's intent, which it is impossible for it physically to carry into execution, cannot change the fact that it has actually consumed and has not resold a part of the crude oil which it purchased for resale. On that part which it has consumed the law imposes the tax.

Plaintiff relies upon certain authorities all of which are distinguishable.

*Peoples Natural Gas Co.* v. *Public Service Com.*, 270 U.S. 550 [46 S.Ct. 371, 70 L.Ed. 726], was a case where gas purchased in West Virginia was conveyed by pipe to Pennsylvania and there mingled with gas produced in Pennsylvania. The mixture was delivered in continuous flow to the consumers. An order of the Public Service Commission of Pennsylvania compelling the plaintiff to continue serving a Pennsylvania community was attacked on the ground that it interfered with interstate commerce. The court held that while the West Virginia gas was in interstate commerce, the Pennsylvania gas was not. "Of course," said the court, "after the commingling the two are undistinguishable. But the proportions of both in the mixture are known and that of either readily may be withdrawn without affecting the transportation or sale of the rest. So, for all practical purposes the two are separable, and neither affects the character of the business as to the other."

It is to be observed of this case that, while it did not involve a tax but a public regulation, the effect of the decision was not to defeat the regulation but to uphold it. In that case by mingling the products the plaintiff sought to evade the regulation, just as here by mingling the products the plaintiff seeks to avoid the tax. The Supreme Court adopted a fiction in that case to uphold a proper public regulation, but as plaintiff points out in the opening brief: "It is a well-known rule that legal fictions will not be adopted unless they are consistent with all relevant facts and circumstances and do equity. (25 C.J. 1086; 10 Cal.Jur. 743; *U. S.* v. *1960 Bags of Coffee,* 8 Cranch. 398, 415 [3 L.Ed. 602]; *Hibbard* v. *Smith,* 67 Cal. 547, 561 [4 P. 473, 8 P. 46, 56 Am.St.Rep. 726]; *MacDonald* v. *Reich & Lievre Inc.,* 100 Cal.App. 736, 741 [281 P. 106]; *Pacific National Bank of San Francisco* v. *Corona National Bank,* 113 Cal.App. 366, 374 [298 P. 144]; *In re Walter J. Schmidt & Company,* 298 F. 314, 316;

*Mitchell* v. *Dunn*, 211 Cal. 129 [294 P. 386] ; *Leavell* v. *Blades*, [237 Mo. 695] 141 S.W. 893.)''

In this case, it is plaintiff who asks us to indulge a legal fiction: that it did not use products manufactured from purchased oil, although it did in fact do so; and it is asking us to indulge the fiction to avoid a tax which the fact imposes upon it.

In *Helvering* v. *Rankin*, 295 U.S. 123 [55 S.Ct. 732, 79 L.Ed. 1343] a purchaser of shares of stock which were not identified by any specific certificates, but were held in the name of a broker or in street names in a common pool, instructed his broker to sell a number of shares purchased by him at a particular time. The court held that this designation was sufficient to fix those specific shares as the ones sold for federal income tax purposes, as against the ''first-in, first-out'' rule of the commissioner of internal revenue. The court pointed out that: ''It is true that certificates provide the ordinary means of identification. But it is not true that they are the only possible means.'' Here the court was dealing with choses in action, not tangible property. The choses in action were identifiable and the particular ones sold were actually identified. The result of the transaction was to cancel the obligation of the broker to deliver the shares of stock purchased on a particular day as a result of a particular order of the customer and to substitute an obligation to pay the customer the price at which that stock was resold. That this was no fiction, but legal fact, is obvious. For example in case of failure to deliver the balance of the stock, upon suit of the purchaser if the statute of limitations had run as to earlier transactions he could not, to avoid the bar of the statute, repudiate his designation and seek to recover on the obligation to deliver the particular stock which he had ordered sold.

As further demonstration that the basis of this decision is the change in legal relations as to the particular chose in action is the holding in the cited case, and in the companion case of *Snyder* v. *Commissioner*, 295 U.S. 134 [55 S.Ct. 737, 79 L.Ed. 1351], that the mere intention of one selling such stock to sell shares purchased at a particular time is not sufficient to effect such purpose where not communicated to the broker.

Nor, where the stock is evidenced by separate certificates, does the intention even when the broker is directed to carry it out, control if the broker in fact transfers another certifi-

cate (*Davidson* v. *Commissioner of Internal Revenue,* 305 U.S. 44 [59 S.Ct. 43, 83 L.Ed. 31]), the court in that case saying: "The commissioner rightly computed gain on the basis of what was done rather than on what petitioner intended to do."

Finally plaintiff relies on a ruling of the U. S. Bureau of Internal Revenue (Ruling ST 679, Cumulative Bulletin XII-1, p. 442) dealing with oil in pipe lines for export. The effect and basis of this order are found in the following quotation:

"The fact that the shipper is unable to identify, during the movement, the particular units of oil which are to be exported, does not destroy the export character of the shipment. . . . Even though . . . the oil . . . cannot be identified as the oil actually delivered to the foreign customer, nevertheless the exemption will apply if it can be shown that, pursuant to the foreign order, the shipper tendered the oil called for in such order for transportation to such foreign customer, and that the oil so tendered was actually transported by pipe line, and reached the port of exportation on a continuous movement prior to the time that an equivalent amount and grade of oil was actually delivered to the foreign customer."

A mere departmental regulation of a federal bureau cannot control the operation or construction of a tax law of this state. Furthermore it is evident that while it is impossible to segregate oil in a pipe line so as to say that this particular oil was actually exported, it is possible to know exactly how much oil passing through the pipe line was exported, and the exclusion of that quantity from the oil to be taxed clearly results in the tax being imposed upon all oil not exported from the country.

No amount of mental legerdemain can change the fact that plaintiff did consume, and did not resell, a portion of the crude oil purchased by it for resale. Upon the portion so consumed the Board of Equalization properly assessed the tax, acting (to quote again from *Davidson* v. *Commissioner of Internal Revenue, supra*) "on the basis of what was done rather than on what petitioner intended to do."

Judgment affirmed.

Nourse, P. J., and Spence, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 15, 1943. Traynor, J., did not participate therein.