[Civ. No. 14731.   First Dist., Div. One.   Nov. 20, 1951.]

MAY W. GIFT, Respondent, v. HANS ·P. AHRNKE et al.,
Appellants.

Huovinen & Koford and Thomas E. Davis for Appellants.

Bronson, Bronson & McKinnon for Respondent.

WOOD (Fred B.), J.—Defendants Albert L. Hammill and Hans P. Ahrnke were partners engaged in the general security brokerage business under the name of Hammill and Company. Defendant American Bonding Company of Baltimore, a corporation, was surety on the bond of Hammill and Company as a broker licensed under the provisions of the Corporate Securities Act. Plaintiff May W. Gift was a customer of and maintained a securities account with Hammill and Company.

Judgment was rendered for plaintiff for $4,000 against Ahrnke, Hammill and the American Bonding Company, and for $13,547.66 against Ahrnke and Hammill. Ahrnke and the bonding company have appealed. Hammill has not.

### The Four Thousand Dollar Award

April 11, 1947, Hammill and Company sold for respondent certain of her shares of stock and credited the net proceeds of the sale, $4,534.69, to her securities account as a free credit balance. About May 15, 1947, she was paid $400 of this sum and $4,000 was transferred from her account to Hammill's personal account with Hammill and Company. About July 16, 1947, she received a promissory note in the principal sum of $4,000, bearing interest at 5 per cent, payable to her, signed by Hammill, as maker, in his individual capacity.

The trial court found that the $4,000 was wrongfully and fraudulently appropriated by Hammill without the knowledge or consent of respondent; that the substitution of Hammill's personal obligation was without her authorization; that she was deceived by the misrepresentations of Hammill and, relying upon those misrepresentations, she thought and understood that her funds were safely invested by and with Hammill and Company; that said purported substitution was fraudulent and a misappropriation of funds received by the partnership in the course and scope of its business, a breach of its fiduciary obligation, and void and of no effect; that ever since April 11, 1947, Hammill and Company, Hammill, and Ahrnke and each of them had been indebted to respondent in the sum of $4,000, representing said free credit balance, and that each of them had neither honestly nor faithfully applied the funds received and had not performed their obligations and undertakings in the purchase and sale of

securities. Judgment for $4,000 was rendered against Hammill, Ahrnke, and American Bonding Company, jointly and severally. In support of their claim that these findings are not supported by the evidence, appellants direct attention to some of the testimony of respondent which tends to conflict with other testimony given by her, a conflict that was resolved against appellants by the trial court. Respondent was a widow in her sixties; had no business training or experience; depended upon the income from her securities for her livelihood; had recently suffered from a mental condition and received shock treatments therefor; placed trust and confidence in Hammill, and had always accepted his advice concerning the sale of her securities and the investment of the proceeds of sale. These facts were well known to Hammill, who had handled her investments since 1937 and was thoroughly familiar with her financial affairs. She testified that she never authorized the transfer of the $4,000 from her credit balance to Hammill's personal account; had no recollection of his requesting a loan; did not recall receiving the note; and that when she first received the note she did not know what it represented and did not understand the significance of the note until it came out in a hearing held by the United States Securities Exchange Commission in January and February, 1948. During her cross-examination she said that she understood the note represented the proceeds from the sale of her stock; that she knew that when she got the note. This last is the testimony upon which appellants rely. At most, it tends to produce a conflict, not necessarily a substantial conflict. She well may have understood that the paper she received in July represented in some way the proceeds of the sale of her stock without understanding the legal significance of the document, continuing confidently to believe that she still had a full credit balance with the firm.

Both appellants further claim that this purported loan transaction was personal to Hammill and the respondent, and resulted in the substitution of Hammill's obligation for that of the partnership. They would conclude, therefore, that Ahrnke has no legal liability as a mere partner, and the bonding company none because its undertaking was not to secure the lending of money to the partnership or to a partner and the substitution of Hammill as a debtor for the partnership as trustee was an alteration of the principal's obligation which operated as a discharge of the surety. There well might be

merit in this point but for the fraud and the violation of the fiduciary relationship by Hammill.

Commencing April 11, 1947, when Hammill and Company received the proceeds of the sale of stock the partnership owed respondent the amount of those proceeds. The mere book entry on May 15, transferring $4,000 from respondent's account to Hammill's did not of itself satisfy or pay any part of that obligation. Nor did the purported substitution in July of Hammill's personal note, under the circumstances related, do so. A new obligation can be substituted for an old one only by contract of the parties, not by any act of the debtor alone. (Civ. Code, §§ 1530-1532.) That, of course, means that such a substitution must be with the consent of the creditor. (See cases collected in 20 Cal. Jur. 250, Novation, § 5.) This creditor did not give her consent. The transfer on the books and the sending of his personal note to respondent was a bit of legerdemain upon the part of Hammill to cover up his misappropriation of $4,000 of respondent's moneys received by the partnership and held by it in trust for plaintiff. For such a misapplication by a partner, the partnership is bound. (Civ. Code, § 2408; now Corp. Code, § 15014.) Under either theory there has been a breach of the obligation of the broker's bond given pursuant to section 6 of the Corporate Securities Act (now Corp. Code, § 25703) ''for the use and benefit of interested persons,'' undertaking that Hammill and Company, its agents and employees, shall strictly comply with the provisions of that act and ''shall honestly and faithfully apply all funds received, and faithfully and honestly perform all obligations and undertakings in the purchase or sale of securities by said broker, his agents and employees.''

The appellant bonding company invokes sections 2819-2821 of the Civil Code as exonerating it. Section 2819 declares that a surety is exonerated ''if by any act of the creditor, without the consent of the surety the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended.'' This by its own terms would be inapplicable when, as here, no alteration or change of position occurred ''by any act of the creditor.''

It is true, as urged by the bonding company, that section 2820 says ''That a promise by a creditor is for any cause void, or voidable by him at his option, shall not prevent it from altering the obligation or suspending or impairing

the remedy within the meaning of the last section [2819]."
The bonding company does not tell us how this provision
applies in this case. There must be a "promise" by the
creditor. Here, there was none. Moreover, the fact that a
void or voidable promise "shall not prevent it" from altering
the obligation or impairing the remedy (within the meaning
of § 2819) falls far short of saying that such a promise in
all cases operates as such an alteration or impairment. Con-
ceivably, it might so operate when the rights of third parties
intervene or other circumstances have occurred which preju-
dicially affect the surety. We are aware of no such circum-
stance here and the appellants have indicated none.

Accordingly, we find no error in that portion of the judg-
ment which holds Ahrnke and the bonding company jointly
and severally liable to respondent in the sum of $4,000.

### The Thirteen Thousand Dollar Award

The judgment for $13,547.66 is based upon findings of
the trial court, amply supported by the evidence, that Ahrnke
contributed to the capital of the Hammill-Ahrnke partner-
ship securities of the market value of $11,500, which formed
substantially the entire capital of the partnership, were
pledged to a bank as security for payment of a partnership
debt of $7,000, and were subject to all the debts and liabilities
of the partnership; that the withdrawal of those securities
and the return thereof to Ahrnke would render the partner-
ship insolvent; that Hammill had overdrawn his account with
the partnership to the extent of $14,000; that with knowledge
of these facts Ahrnke during July or early August and prior
to August 8, 1947, notified Hammill he wished to withdraw
as a partner and to have returned to him his capital con-
tribution of securities; that Ahrnke then authorized and
appointed Hammill as agent to take the necessary steps and
proceedings in order to dissolve and wind up the Hammill-
Ahrnke partnership, to procure the release of Ahrnke's se-
curities from the bank in which they were pledged as security
of a partnership loan, and to arrange for and effectuate the
return of said securities in full to Ahrnke, and Hammill
agreed to do so; that Hammill, acting as such agent, did
procure the release of Ahrnke's securities from the pledge
and did return them in full to Ahrnke, who accepted them
from Hammill. The court further found that by certain
misrepresentations, concealments, and promises which he did

not intend to keep,* Hammill falsely and fraudulently, and in abuse of his fiduciary obligation to respondent, induced respondent to execute a purported partnership agreement with Hammill for the conduct of a securities brokerage business and to deposit with Hammill securities of the value of $16,107.50; that Hammill deposited said securities with the bank in order to effectuate and did thereby effectuate the withdrawal from the pledge and return to Ahrnke of his capital contribution to the Hammill-Ahrnke partnership; that, subsequently, Hammill increased the indebtedness to the bank from $7,000 to $11,500, and certain of respondent's securities were sold and the proceeds applied to said indebtedness in payment thereof; that thereafter, at the suit of a creditor, a judgment for $3,011.84 was satisfied through the sale of respondent's securities, and, in consequence, all that respondent ever received back from the securities entrusted by her to Hammill was the sum of $2,259.84; that respondent did not discover the falsity and fraud of Hammill's representations, concealments, and promises, until the early part of 1948; that she did not agree to or assume the debts and liabilities of the Hammill-Ahrnke partnership; that after the return of his securities to him, Ahrnke received actual

---

*Hammill's *misrepresentations* were that Ahrnke was withdrawing because of ill health, that respondent's securities would be placed in safekeeping with the bank, would be at all times perfectly safe and withdrawable by her at any time she wished; that she would assume no obligations by becoming a partner; and that the transaction was a good and safe investment for her.

His *concealments* were the failure to disclose the fact that the old partnership was being dissolved, at Ahrnke's demand, because of the small income return, that respondent's securities would not be safe or withdrawable but would be pledged for the old partnership loan of $7,000 to accomplish the withdrawal of Ahrnke's securities; that respondent was assuming the obligations of a general partner and her securities would be subject to the claims of creditors of the new firm, that any other assets of hers might become subject to such claims, that Hammill's drawing account showed a deficit of $14,000 as of August 11, 1947; that giving effect to the withdrawal of Ahrnke's securities the old partnership showed a deficit of $3,609.51, excluding the debt owed to respondent in the sum of $4,000, and including said debt a deficit of $7,609.51; that were Ahrnke's securities withdrawn the old partnership would be insolvent to the amount of $7,609.51, and that to secure the release of Ahrnke's securities from the pledge it would be necessary immediately to pledge to the bank respondent's capital contribution in order to secure the bank loan to the old partnership.

He *falsely and fraudulently promised* he would not withdraw in excess of $400 each month from the partnership business, whereas he intended to and did continue to withdraw $1,000 per month; and that he would place respondent's securities in safekeeping with a bank, whereas he intended to and did subject them to the lien of the pledge to the bank for the $7,000 debt of the old partnership, and intended to and thereafter did increase the bank loan to a total of $11,500.

knowledge of the fraud and deceit practiced upon respondent by Hammill in inducing her to enter into the purported partnership agreement so that Ahrnke's securities might be returned to him in their entirety; and Ahrnke ratified said fraud and deceit of his agent and has ever since retained the whole of his said securities, or their value, for his own use and benefit.

As conclusions of law, the trial court declared that Hammill was authorized by Ahrnke and appointed as Ahrnke's agent to liquidate the business affairs of defendant Hammill and Company and to effect the release of Ahrnke's securities from the pledge, and other liabilities of defendant Hammill and Company, so that Ahrnke's securities might be returned to him free and clear of all liabilities of defendant Hammill and Company; and Hammill undertook to do so, and in the course of said undertaking and, when acting as such agent, Hammill so defrauded and deceived respondent that as a proximate result of said fraud and deceit respondent was damaged in the amount of $13,547.66; that Ahrnke thereafter ratified the fraud and deceit of his agent, and retained the benefits of his agent's acts on his behalf, with full knowledge of said fraud and deceit; and Ahrnke thereby became liable to respondent for said damages in said amount.

Challenging these conclusions of law, Ahrnke starts with the premise that Hammill was the agent of Ahrnke to liquidate the affairs of the Hammill-Ahrnke partnership. He then invokes the statute which confers authority upon a partner to bind the partnership by acts ''appropriate for winding up partnership affairs or completing transactions unfinished at dissolution'' (Civ. Code, § 2429; now Corp. Code, § 15035), and argues that such authority does not extend to and include the creation of new obligations such as the formation of a new partnership with a third person. He ignores the fact that his agency agreement with Hammill embraced as its main purpose the release of Ahrnke's securities (the principal assets of the partnership) from the pledge and the return thereof to Ahrnke, free and clear of any and all partnership liabilities. That was no mere winding up authority envisaged by the statute cited. We are not here concerned with the limited scope of the authority which that statute would have given Hammill in the absence of this agreement. The release of Ahrnke's securities from the pledge, free and clear of all liabilities of the partnership, under the circumstances related, necessarily involved an undertaking upon Hammill's part to seek and procure new funds from

outside sources. In seeking such funds from respondent for that purpose, Hammill was transacting the business of the agency. Ahrnke, as principal, is responsible to respondent for the "wrongful acts committed by such agent in and as a part of the transaction of such business" (Civ. Code, § 2338).

Such "wrongful acts" include fraud and deceit committed by the agent (*Proctor* v. *Arakelian*, 208 Cal. 82 [280 P. 368]), even though the principal actually receives none of the fruits of the fraud (*Ross* v. *Prudential Guar. Bldg. etc. Assn.*, 140 Cal.App. 148 [35 P.2d 176]).

Ahrnke claims the finding that he ratified the transaction is without support in the evidence, because the evidence shows that Hammill acted for himself and as agent of respondent, not as agent of Ahrnke; and that when Ahrnke received the securities from Hammill, Ahrnke was unaware of the Hammill-Gift transaction or of the fraud committed by Hammill. Neither contention is correct. Ahrnke testified that he had sent word to Hammill to get him out of the firm and to return his securities, and Hammill testified that he agreed to do so. Later, Ahrnke and Hammill signed a dissolution agreement which, among other things, declared that Hammill "agrees to immediately enter into and upon all of the proceedings necessary to effect a complete liquidation of said copartnership business and agrees to assume and pay any and all outstanding obligations of said copartnership and First Party [Ahrnke] shall be held harmless from the payment of any of said obligations." At the trial, Ahrnke's counsel stated that the only winding up was the return of Ahrnke's securities. (The securities could not be returned without payment of the debt or substitution of other collateral.) Hammill testified that he had to have respondent's securities in the bank and under a bank pledge before Ahrnke's securities could be released. This evidence amply supports the finding that Hammill did act for Ahrnke. The fact that Ahrnke was unaware of the fraud during the time of its commission and the return of Ahrnke's securities to him, did not operate to prevent ratification by Ahrnke when, a few months later, he learned the details of the fraud and did not then disaffirm the acts of Hammill, but continued to retain the benefit of those acts, with full knowledge of the means by which he acquired those benefits. (*Harris* v. *Seidell*, 1 Cal.App.2d 410, 413 [36 P.2d 1104]; *Gardner* v. *City of Glendale*, 45 Cal.App. 641 [118 P. 307].) In this connection, Ahrnke mistakenly claims that there is no finding

of his knowledge of the details of the fraud. He overlooks the fact that the court found that "Subsequent to August 11, 1947, defendant Ahrnke received actual knowledge of the aforesaid fraud and deceit practiced upon plaintiff by defendant Hammill. . . ."

Ahrnke further contends that the Hammill-Gift partnership came into existence and engaged in business for several months (until respondent's securities had been dissipated and she learned of the fraud which had been practiced), and that Ahrnke, not a member of that partnership, should not be held liable for losses sustained during the conduct of its business. Here, again, Ahrnke ignores the legal basis of his liability, which was the fraud committed by his agent, Hammill, in obtaining respondent's securities for the substitution and release of Ahrnke's securities from the pledge and the return thereof to Ahrnke, free and clear of any and all liabilities of the Hammill-Ahrnke partnership. He cannot split the agency transaction into separate parts, and take the benefits without the burden. (*Gardner* v. *City of Glendale, supra,* 45 Cal.App. 641, 644; see, also, *Vanciel* v. *Kumle,* 26 Cal.2d 732, 734-735 [160 P.2d 802].)

Finally, Ahrnke argues that as a retiring partner he was liable, at most, for the amount by which the liabilities of the Hammill-Ahrnke partnership exceeded its assets upon dissolution of that partnership and the withdrawal of Ahrnke's securities; i.e., $3,609.51, exclusive of respondent's credit balance of $4,000. This is but another attempt, in another form, by Ahrnke to break the agency transaction into separate parts and, by ignoring his responsibility to respondent for the acts of his agent, Hammill, to retain the benefits and avoid the burdens inherent in the transaction whereby Ahrnke, through his agent, Hammill, effected the return of his securities (the principal tangible asset of the partnership), free and clear of the debts and liabilities of the partnership.

The several portions of the judgment appealed from are affirmed.

Peters, P. J., and Bray, J., concurred.