TAYLOR, J. pro tem.
 
 *
 

 This is an appeal from a judgment after trial by the court denying plaintiffs a recovery from defendant Bauer-Lesser of a $4,070 down payment on a house collected by Bauer-Lesser’s sales agent, defendant Wilson Dills Realty Company.
 

 The material facts are not in dispute. On July 7, 1955, the defendant Bauer-Lesser and defendant Wilson Dills Realty, hereafter referred to as defendant Dills, executed an exclusive
 
 *47
 
 sales agency agreement which provided that defendant Dills was to pursue the sale of homes in defendant Bauer-Lesser’s subdivision, handle financing arrangements for the prospective purchasers, prepare and complete loan papers, and do other ordinary work of a real estate agent. It also provided that defendant Dills was to deliver to defendant Bauer-Lesser for deposit in a
 
 trust account
 
 all deposits received from purchasers in the form received, with checks endorsed by Dills if necessary for collection, and Dills was to hold all deposits in trust in the form received until so delivered.
 

 On November 1,1956, the defendant Dills sold a home to the plaintiffs. Plaintiffs gave a deposit check of $100 to Dills and executed a “Purchase Agreement and Deposit Receipt.”
 

 The purchase agreement and deposit receipt was a printed form containing, among others, the following clauses:
 

 “First
 
 The full purchase price shall be $18,150.00 lawful money of the United States. Said purchase price is to be obtained from the proceeds of a PHA mortgage loan in the amount of $14,200.00 for a term of 20 years and the balance of $3950.00 to be paid from the purchaser’s cash assets at the
 
 time of the close of the beforementioned loan. . . .
 

 “Third
 
 It is estimated that the purchaser’s share of the closing expenses in connection with this transaction will be approximately $550.00, payable on demand upon notification by the Wilson Dills Realty Co.,
 
 in whose offices this transaction will be consummated.
 

 “Fourth
 
 Receipt of $100.00 paid by the purchaser in part payment of the above is
 
 herein acknowledged by the seller or his authorized agent.
 

 “Fifth
 
 It is further agreed that in the event the purchaser is unable to obtain the mortgage loan referred to in Paragraph One, his cash deposit, as set forth in Paragraph Pour,
 
 shall be refunded by the seller
 
 upon notification by the lender of the rejection of the loan application.” (Emphasis added.)
 

 This agreement was accepted and signed by the principal defendant Bauer-Lesser on November 12, 1956, and the $100 deposit check was delivered to them by their agent Dills.
 

 The plaintiffs wanted to move into the house pending the PHA financing. On November 15,1956, plaintiffs entered into a written agreement with Dills, as
 
 “Agent for Owner,”
 
 (emphasis added) permitting plaintiffs possession of the home until recordation of the deed, at $2.00 per day rental. Plaintiffs agreed to pay attorney’s fees and costs in the event of eviction, and also the cost of replacement of any damaged
 
 *48
 
 property. Before executing this agreement, the defendant Dills demanded and received plaintiffs’ check made out to “Wilson Dills, Trustee” in the amount of $3,970, “Down Payment & 2 months rent ...” This check was never delivered by Dills to Bauer-Lesser. Plaintiffs moved into the premises and paid additional rent pursuant to this agreement.
 

 The plaintiffs inquired of defendant Dills several times about the status of the PHA loan and delivery of the deed and were given evasive answers. On April 16, 1957, plaintiffs received written notice from defendant Bauer-Lesser that Dills was no longer agent for collection of rents. Subsequently the plaintiffs called Bauer-Lesser demanding the deed to their property or return of their money. On June 27, 1957, defendant Bauer-Lesser demanded in writing that plaintiffs vacate the premises, and after receiving a notice to quit, dated July 9, 1957. plaintiffs relinquished possession.
 

 The defendant Dills absconded with the $3,970 paid him by the plaintiffs, and they filed an action against both the agent Dills and principal Bauer-Lesser to recover the money. The defendant Bauer-Lesser counterclaimed against the plaintiffs for unpaid rentals, and it was stipulated at the trial that the amount thereof was $52. The trial court gave judgment to the plaintiffs against agent Dills in the amount of $4,070 plus costs and interest, but found for the defendant Bauer-Lesser on the complaint and awarded $52 against the plaintiffs on the counterclaim for rental. The plaintiffs appeal from that part of the judgment denying them recovery of $4,070 from defendant Bauer-Lesser.
 

 The plaintiffs contend that defendant Dills in accepting the deposit and down payment, was acting within the scope of his authority as agent and that the defendant Bauer-Lesser as principal is therefore liable for the loss to plaintiffs due to Dill’s misconduct.
 

 Section 2338 of the Civil Code provides: “Principal’s responsibility for agent’s negligence or omission. Unless required by or under the authority of law to employ that particular agent, a principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business, and for his willful omission to fulfill the obligations of the principal.” The express or implied scope of authority actually conferred upon an agent may be determined either by written or oral authorization or by the conduct of the principal and
 
 *49
 
 agent in their business relationships.
 
 (Smith
 
 v.
 
 Schuttpelz,
 
 1 Cal.2d 158 [33 P.2d 836].)
 

 The agent Dills was acting within the scope of his authority in accepting the $3,970. The exclusive agency contract provides that defendant Dills is “to deliver to Bauer-Lesser for deposit in a trust account, all deposits
 
 received from purchasers in the form received”
 
 (emphasis added), and provides for his endorsement thereon where necessary. The agreement sets no limitation as to the size of deposits. This agreement, then, clearly implies actual authority in the agent Dills to receive as payee deposit checks of unlimited amounts from the purchasers of homes.
 

 The purchase agreement and deposit receipt which was filled in and submitted by the agent Dills for plaintiffs’ signatures at the time the $100 deposit was collected
 
 and before the agreement was executed by the principal Bauer-Lesser
 
 gives further evidence of the agent’s authority to accept unlimited deposits from the purchasers. The form of this agreement approved by the principal, provides, “Receipt of $-paid by the purchaser in part payment of the above [referring to the unpaid balance] is herein acknowledged by the seller or his authorized agent.” The form provides no limitation on the agent concerning the amount of deposits. It is clear that he could have, within his authority, accepted all or any part of the total unpaid balance. This same purchase agreement provides, in referring to the closing expenses, that the “transaction will be consummated” in the offices of the agent Dills, and further provides that the seller will refund the purchaser’s cash deposit in the event he is unable to obtain his mortgage loan.
 

 The defendant Bauer-Lesser argues that aside from the $100 deposit, the money which is the basis of this controversy, was never received by them, nor did -they ever receive any benefit of any kind from it. The courts have consistently held that the principal is responsible to third parties for the misconduct of an agent committed within the scope of his authority even though the principal is completely innocent and has received no benefit from the transaction.
 
 (Wells Fargo Bank
 
 v.
 
 Dowd,
 
 139 Cal.App.2d 561 [294 P.2d 159];
 
 Rutherford
 
 v.
 
 Rideout Bank,
 
 11 Cal.2d 479 [80 P.2d 978, 117 A.L.R. 383]; Rest., Agency, § 261.) In
 
 A. G. Spalding & Bros.
 
 v.
 
 Contra Costa County,
 
 12 Cal.App.2d 262, 264 [55 P.2d 520], where an agent had misappropriated the proceeds of payments collected for his principal from the
 
 *50
 
 sale of school equipment to the county, the court held, “when an agent is authorized by his principal to accept payment for goods sold, receives payment' from the debtor and gives a receipt therefor in the name of his principal, ’ ’ the debt between the principal and the debtor is discharged.
 

 The law reasons that where one of two innocent parties must suffer the loss should be accepted by the principal who is responsible for the selection of the agent and for the definition of his authority. As stated in
 
 Eamoe
 
 v.
 
 Big Bear Land & Water Co.,
 
 98 Cal.App.2d 370, 374 [220 P.2d 408] : “. . . the agent has been negligent in the performance of his duties, and some innocent person must be the loser. Should it not be the one who gave the agent the power he misused, intentionally or unintentionally ? ’ ’
 

 The defendants contend that the purchase agreement and deposit receipt provided that the balance of $3,950 was to be paid “at the time of the close of the . . . loan,” that plaintiffs should have suspected Dills’ motives in this advanced collection, and further, that had the balance been paid at the close, in the ordinary course of events, it would have been paid to an escrow holder along with the FHA loan funds, and thus protected.
 

 It is true that when a purchase agreement provides that money is to be paid at a specified time the seller is not required to accept it before that time any more than the purchaser need pay it in advance, and the seller, of course, cannot be declared in default for his refusal to accept.
 
 (Record etc. Co.
 
 v.
 
 Pageman Hold. Corp.,
 
 42 Cal.2d 227 [266 P.2d 1].) However, it would be a strained interpretation to hold that the purchaser, if he desires to pay the seller’s .agent prematurely, does so at his own risk. As stated previously, there is nothing in the purchase agreement form which would lead the purchaser to believe that he could not with absolute safety give the agent the entire unpaid balance as the original deposit if he so desired. A contract is construed most strongly against the party who drafts or supplies it.
 
 (Glenn
 
 v.
 
 Bacon,
 
 86 Cal.App. 58 [260 P. 559]; see Civ. Code, § 1654.) If the seller desired to limit the amount of deposits to be accepted by the agent he should have done so in the agency contract and the purchase agreement forms.
 

 The advance request by defendant Dills for the payment of the unpaid balance is not a suspicious circumstance for which the plaintiffs can be held accountable since it was made as a condition to the immediate occupancy of the
 
 *51
 
 home. This would seem reasonable security to cover unpaid rentals, possible damage to the house and the cost of eviction in the event that the sale was not completed. As stated in
 
 Victor Oil Co.
 
 v.
 
 Drum,
 
 184 Cal. 226, 241 [193 P. 243] : “The courts will not lightly seize upon some small circumstance to deny relief to a party plainly shown to have been defrauded against those who have defrauded him on the ground, forsooth, that he did not discover the fact that he had been cheated as soon as he might have done. It is only where the party defrauded should plainly have discovered the fraud except for his own inexcusable inattention that he will be charged with discovery in advance of actual knowledge on his part. ’ ’
 

 There is nothing in the purchase agreement requiring that the down payment be made to any escrow holder. In fact, the agreement provides that the transaction was to be consummated in agent Dills’ office, which would seem to imply, in any event, that the down payment was to be made to the Dills realty company at closure.
 

 The defendants cite a number of cases involving the principle of ostensible authority. They state the well recognized proposition that a belief by a party that the agent has authority founded on the agent’s statement alone is not sufficient and that such belief and justifiable reliance thereon must be based on some conduct of the principal giving the agent the appearance of authority.
 
 (Dickens
 
 v.
 
 Bunker,
 
 169 Cal.App.2d 383 [337 P.2d 489];
 
 Hobart
 
 v.
 
 Hobart Estate Co.,
 
 26 Cal.2d 412 [159 P.2d 958];
 
 Ernst
 
 v.
 
 Searle,
 
 218 Cal. 233 [22 P.2d 715].) It is not necessary in this case to consider the question of ostensible authority since the documents in evidence clearly establish that the principal, Bauer-Lesser, had impliedly, if not expressly, conferred actual authority upon its agent to collect deposits on the purchase price of its properties without limitation as to amount.
 

 Though there is nothing in the documents in evidence on the subject, apparently the defendant Bauer-Lesser is not questioning the agent’s authority in permitting plaintiffs’ possession prior to closure and in charging rentals. The defendant has ratified and approved the agent’s conduct by bringing suit for unpaid rents and thus accepting the benefits of the agreement. We do not believe that the defendant should then be allowed to escape responsibility for its agent's collection of the down payment which was a condition to the possession of the house by plaintiffs and which is clearly in
 

 
 *52
 
 consonance with the authority conferred on the agent by the agreements in evidenec. A principal “cannot split the agency transaction into separate parts, and take the benefits without the burden.’’
 
 (Gift
 
 v.
 
 Ahrnke,
 
 107 Cal.App.2d 614, 623 [237 P.2d 706].) The justice of holding the principal responsible even though he may be innocent of any wrongdoing himself, is apparent when we consider that the principal is in a position to investigate and secure scrupulous agents, and if advisable, to bond them against the possibility of loss to those who are in no position to protect themselves.
 

 The judgment in favor of defendant Bauer-Lesser on plaintiffs’ complaint is reversed with direction to enter judgment against defendant Bauer-Lesser in the amount of $4,018 (allowing for counterclaim of $52), plus interest thereon from November 15, 1956, until paid.
 

 Bray, P. J., and Tobriner, J., concurred.
 

 Respondents’ petition for a hearing by the Supreme Court was denied May 18, 1960. Dooling, J, pro tern.,
 
 *
 
 participated therein in place of Spence, J.
 

 *
 

 Assigned by Chairman of Judicial Council.
 

 *
 

 Assigned by Chairman of Judicial Council.