[Nos. A052624, A053679. First Dist., Div. Four. June 10, 1993.]

MICHAEL FRIDDLE, Plaintiff, Cross-defendant and Appellant, v. ROBERT EPSTEIN et al., Defendants, Cross-complainants and Appellants.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III.

## COUNSEL

Smith, Merrill & Peffer, Charles E. Merrill and Mary B. Yudien for Plaintiff, Cross-defendant and Appellant.

Robert M. Epstein, in pro. per., Robert C. Schubert and Sturdevant & Sturdevant for Defendants, Cross-complainants and Appellants.

## OPINION

**POCHÉ, Acting P. J.**—This controversy between a real estate broker and his clients presents the following issues: (1) With respect to a contract arranged by their broker, can the clients ratify less than the whole of the contract? (2) Is the Invasion of Privacy Act (Pen. Code, §§ 630-637.6)[1] violated if a surreptitious recording of a confidential communication is not published to a third person? (3) Is a civil litigant who establishes a violation of the Invasion of Privacy Act entitled to recover a mandatory minimum award of $3,000 without regard to any actual damagess suffered? We hold that the answer to the first question is No, while the second and third must be answered YES.

### BACKGROUND

Plaintiff Michael Friddle, a licensed real estate broker, filed a complaint to recover damages and a $520,000 commission he alleged was owed him by defendants Robert Epstein and Richard Chi for their purchase of a large parcel of real estate. Defendants filed separate cross-complaints to recover a commission of $210,000 they had paid plaintiff in connection with the resale of the property shortly thereafter. Defendants also sought monetary awards pursuant to the privacy act for plaintiff's surreptitious recording of confidential communications between himself and defendants.

It is apparent from the parties' briefs that they have little real disagreement with the detailed factual findings made by the trial court, although there is healthy dispute about certain deductions or legal conclusions which those findings may support. Reduced to their essentials, the events are these:

The property in question is a tract of 142 acres situated in Livermore. Plaintiff, who had acted as the broker on the sale of the tract on a prior occasion, learned that the current owners would be receptive to purchase offers, and that the Bay Area Rapid Transit District (BART) planned to make such an offer. In June of 1989 plaintiff presented a $5 million offer from a would-be buyer. Although it was rejected, the offer did produce a writing—a form of purchase agreement—which figures prominently in this litigation.

---

[1]Statutory references are to the Penal Code unless otherwise indicated.

On June 27, 1989, plaintiff met defendants, who had become interested in buying and then reselling the property to BART. Having heard reports which caused him to suspect Epstein's trustworthiness, plaintiff made a tape recording of the ensuing discussion without the knowledge or approval of defendants. At this meeting a copy of the purchase agreement form was discussed as the basis for an offer defendants might make. The copy of the form produced by plaintiff at trial had a number of interlineated handwritten modifications, one of which was that "Robert Epstein hereby agrees to pay a commission of 10% to Friddle Real Estate." This writing bore a signature of "Robert Epstein" and the handwritten initials "RE" on all but its final page. After hearing conflicting testimony the trial court found that "Friddle did not prove that Epstein signed and initialed the June 29, 1989 agreement."

A second purchase agreement form was prepared by plaintiff on or about July 7, 1989. It too bore the signature of "Robert Epstein" and the handwritten initials "RE" on its pages. Upon conflicting evidence the trial court found that the signature and initials were made by plaintiff without Epstein's approval or authorization. This document, which stated that "The payment of Buyer's Broker's commission is the subject of a separate agreement between [Epstein] and Buyer's Broker," was accepted by the tract's owners. Having paid $5.2 million for the property, defendants less than a week later sold 115 of the tract's 142 acres to BART for $7 million.[2] Pursuant to a written agreement, plaintiff was paid a commission of $210,00 for acting as defendants' broker for this sale to BART.

During this period plaintiff prepared two "Brokerage Fee" agreements providing that he would be paid a commission of $520,000 for the initial purchase of the property. Defendants refused to sign either of these documents.

The parties met on August 18, 1989, to discuss the disputed commission situation. This meeting was also recorded by plaintiff, again without defendants' knowledge or consent. The tape of this meeting, unlike the one made at the earlier June meeting, was not received in evidence because the trial court determined that the meeting was intended to be confidential.

The trial court concluded (among other things) that (1) plaintiff's claim for the purchase commission was barred by the applicable statute of frauds—

[2]Documents introduced at trial disclose that defendants acquired the property as partners and in their own names but for the beneficial interest of their families and family-controlled entities. Having received a partial assignment of Epstein's interest prior to the time the property first changed hands, Chi was a formal party to both the purchase and the resale. There is no dispute that Epstein's signature on the purchase agreement was equally binding on his partner. (See 9 Witkin, Summary of Cal. Law (9th ed. 1989) Partnership, § 42, p. 436.)

Civil Code section 1624, subdivision (d)—because he had no subscribed writing reflecting a brokerage agreement with defendants; (2) defendants were not entitled to recover the resale commission they had paid to plaintiff, and (3) defendants would not receive statutory civil awards for plaintiff violating their privacy, even though the court determined that one of the communications had been illegally recorded. In short, the court left the parties as they were. The trial court's judgment satisfied none of the parties, all of whom have appealed.

REVIEW

I

Plaintiff's defeat in the trial court was due entirely to his inability to demonstrate compliance with Civil Code section 1624, subdivision (d). As relevant here, that statute provides: "The following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent: . . . [¶] An agreement authorizing or employing an agent, broker, or any other person to purchase or sell real estate . . . for compensation or a commission."

█ It has long been the rule in this state that the essential requirements of this statute are that there be some written evidence of (1) subscription by the party to be charged and (2) the fact of employment, in other words the authority to act. Unless ʂ ʃme written memorandum exists sufficient to show such authorization, a broker cannot maintain any claim for a commission. (E.g., *Franklin* v. *Hansen* (1963) 59 Cal.2d 570, 576 [30 Cal.Rptr. 530, 381 P.2d 386]; 1 Witkin, *op. cit. supra*, Contracts, §§ 278-281, pp. 272-273.) The second element plaintiff can satisfy easily: the so-called July 7th agreement specifically refers to plaintiff as "Buyer's Broker." The first element demands greater attention.

As previously mentioned, the trial court resolved a conflict in the testimony by finding that plaintiff was not authorized to append Epstein's signature to the July 7th agreement. This finding is immaterial in light of the trial court's additional finding that defendants subsequently ratified the agreement.[3] The trial court added, however, that defendants' ratification was effective only as to those portions of the agreement dealing with the sale, but not the provision regarding the "separate agreement" for "payment of Buyer's Broker's commission." █ Treating the "separate agreement" as

---

[3]As will be seen, the same is true with respect to what the trial court found was the unauthorized signature and initials made by plaintiff on the copy of the June 27 agreement.

meaning the provision in the June 27 agreement for "a commission of 10%" to plaintiff, the trial court concluded that the earlier agreement could not be ratified because defendants had not signed it, and it thus did not independently comply with Civil Code, section 1624, subdivision (d). This reasoning is doubly flawed.

Ratification is an all-or-nothing proposition. ■ According to our Supreme Court, it is an "elementary rule of agency law that a principal is not allowed to ratify the unauthorized acts of an agent to the extent that they are beneficial, and disavow them to the extent that they are damaging. If a principal ratifies part of a transaction, he is deemed to ratify the whole of it. (Civ. Code, § 2311; . . . ; *Warshauer* v. *Bauer Construction Co.* (1960) 179 Cal.App.2d 44, 52 [3 Cal.Rptr. 570]; Rest.2d Agency, § 96.) . . . . As the court said in *Warshauer, supra,* quoting from *Gift* v. *Ahrnke* (1951) 107 Cal.App.2d 614, 623 [237 P.2d 706], 'A principal "cannot split the agency transaction into separate parts, and take the benefits without the burden." ' " (*Navrides* v. *Zurich Ins. Co.* (1971) 5 Cal.3d 698, 704 [97 Cal.Rptr. 309, 488 P.2d 637, 49 A.L.R.3d 828] [some citations omitted].) "The principal must either disaffirm the unauthorized act of his agent or ratify the unauthorized contract *in the form his agent made it.* He cannot reform the contract to his own . . . purposes." (*McClintock* v. *Robinson* (1937) 18 Cal.App.2d 577, 582 [64 P.2d 749] [italics added].)[4]

■ Confronted with the July 7 purchase agreement made by plaintiff, including the "separate agreement" provision which he may or may not have unilaterally added, defendants did not repudiate it; they embraced it. But the purchase was a package, and plaintiff's "separate agreement" is a part of it. Defendant's theory of partial or selective ratification fails accordingly.

Equally misplaced is the belief that if the commission provision in the June 27 agreement constitutes the "separate agreement" referred to in the July 7 agreement, the June 27 agreement must also satisfy Civil Code, section 1624, subdivision (d). The later agreement, as ratified by defendants, provides all that statute requires. Beyond this, no additional compliance with section 1624, subdivision (d) is necessary.

■ "In the absence of any agreement as to compensation a reasonable commission may properly be inferred, or where there has been a parol agreement as to compensation[,] evidence thereof is admissible to establish the agreed amount." (*Beazell* v. *Schrader* (1963) 59 Cal.2d 577, 580 [30

---

[4]Among the unauthorized acts covered by this principle is an agent forging the principal's signature to an instrument. (See *Rakestraw* v. *Rodrigues* (1972) 8 Cal.3d 67, 73-74 [104 Cal.Rptr. 57, 500 P.2d 1401] and decisions cited.)

Cal.Rptr. 534, 381 P.2d 390]; accord, e.g., *Rader Co.* v. *Stone* (1986) 178 Cal.App.3d 10, 21 [223 Cal.Rptr. 806]; *Seck* v. *Foulks* (1972) 25 Cal.App.3d 556, 568 [102 Cal.Rptr. 170].)

■■■ With Civil Code, section 1624, subdivision (d) satisfied, plaintiff must be recognized as a party to a valid and enforceable contract. He is therefore entitled to maintain his first cause of action, for defendants' alleged breach of that contract. Further proceedings in the trial court are required to establish whether plaintiff is owed a commission, and if so in what amount.

The trial court could find that the "separate agreement" is indeed an incorporation by reference of the 10 percent provision from the earlier agreement. The court might conclude that the commission agreement is, as defendants insist, that the $210,000 plaintiff has already received was a commission for both the purchase and the resale. It is also possible that the trial court could find that there is no ascertainable agreement and that plaintiff should recover "a reasonable commission." (*Beazell* v. *Schrader, supra*, 59 Cal.2d at p. 580.) If so, the amount of the commission will have to be fixed. These matters cannot be resolved on this appeal and thus require reversal.

## II, III*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

## IV

In 1967, upon determining that "advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society," the Legislature enacted the privacy act "to protect the right of privacy of the people of this state." (§ 630.)

One of its provisions established criminal penalties for "Every person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, *eavesdrops upon or records the confidential communication*, whether the

---

*See footnote, *ante*, page 1649.

communication is carried on among such parties in the presence of one another or by means of a telegraph, telephone or other device . . . ." (§ 632, subd. (a), italics added.)[5] The same section defines "confidential communication" as including "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering . . . or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." (§ 632, subd. (c).)

In addition to criminal penalties for the substantive offenses (and any accompanying trespass), the privacy act authorizes various forms of civil redress. Section 637.2 provides in pertinent part:

"(a) Any person who has been injured by a violation of this chapter may bring an action against the person who committed the violation for the greater of the following amounts: [¶] (1) Three thousand dollars ($3,000).[6] [¶] (2) Three times the amount of actual damages, if any, sustained by the plaintiff.

"(b) Any person may, in accordance with the provisions of . . . the Code of Civil Procedure, bring an action to enjoin and restrain any violation of this chapter, and may in the same action seek damages as provided in subdivision (a).

"(c) It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages."

Defendants attack virtually every action taken by the trial court with respect to their privacy act claims. They first contend that the court erroneously concluded the parties' June 29th meeting "was not intended to be confidential" and therefore presumably did not involve confidential communications within the definition provided by section 632. Next, they argue that, having found that the parties' August 18th meeting "was intended to be confidential" and that plaintiff's recording of that meeting did "violate" section 632, the court then erroneously concluded that defendants' privacy was not "invaded" because plaintiff "did not publish the content of either conversation." Finally, they challenge the court's refusal to award them any monetary relief on the ground they were not injured.

---

[5]It is undisputed that plaintiff's use of a tape recorder to preserve his conversations with defendants is within the scope of section 632. (See e.g., *Frio* v. *Superior Court* (1988) 203 Cal.App.3d 1480, 1488 [250 Cal.Rptr. 819]; *Warden* v. *Kahn* (1979) 99 Cal.App.3d 805, 812 [160 Cal.Rptr. 471].)

[6]Recently increased to $5,000. (Stats. 1992, ch. 298, § 11.)

### (A)

Prior to this appeal defendants did not protest any perceived deficiencies in the trial court's finding that the June 29th meeting "was not intended to be confidential." We may therefore imply subsidiary findings and resolve any ambiguities against defendants. (Code Civ. Proc., § 634; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1134 [275 Cal.Rptr. 797, 800 P.2d 1227].) The finding may therefore be construed as a determination that none of the parties had a subjective desire for confidentiality.

■ Defendants' testimony that they desired confidentiality could have been rejected by the court, which could have opted as the trier of fact to believe plaintiff's testimony that he understood the information from the June 29th meeting would be disclosed to others if "needed to expedite the opening of escrow and the sale." That testimony qualifies as substantial evidence. (Evid. Code, § 411.) It is true that plaintiff's testimony on this point was not uniform. However, any such discrepancies fall before the rule that a trier of fact "is entitled to accept or reject all or any part of the testimony of any witness or to believe and accept a portion of the testimony of a particular witness and disbelieve the remainder of his testimony." (*Mosesian* v. *Bagdasarian* (1968) 260 Cal.App.2d 361, 368 [67 Cal.Rptr. 369] [citations omitted].) Additionally, we imply a finding that defendants failed to satisfy their burden of proving a subjective belief in the meeting's confidentiality.

### (B)

The trial court's discussion of the disclosure issue was as follows: "The right to privacy is violated only by public disclosure to the public in general, or to a large number of persons, as distinguished from an individual or a few persons. *Schwartz* v. *Thiele* (1966) 242 Cal.[App.]2d 799, 805 [51 Cal.Rptr. 767]. [¶] Here, Friddle tape recorded two conversations without the consent of the other parties. . . . Friddle did not publish the content of either conversation; he did not invade the privacy of Chi or Epstein by recording the conversations of June 29 or August 18. 1989; Chi and Epstein were not injured."

■ By imposing a disclosure requirement as a predicate for a compensable violation of section 632 the trial court ignored the statute's plain language reaching "Every person who . . . eavesdrops upon or records [a] confidential communication. . . ." There is nothing in section 632 which suggests that an intercepted confidential communication must also be disclosed. If the Legislature intended to impose such a requirement, other

provisions of the privacy act establish that it knew how to achieve that result.[7] The only conclusion possible is that the Legislature did not intend disclosure to be a requirement for an actionable violation of section 632. This court will not insert what the Legislature omitted. (Code Civ. Proc., § 1858.)

We hold that an actionable violation of section 632 does not require disclosure of a confidential communication to a third party.[8] (See *Kimmel* v. *Goland* (1990) 51 Cal.3d 202, 209-212 [271 Cal.Rptr. 191, 793 P.2d 524].)

(C)

■ The trial court denied defendants any recovery for the violation by plaintiff of their privacy by recording the August 18th conversation, on the ground that because plaintiff had not disclosed the contents of that conversation defendants suffered no injury. It has already been established that disclosure is not required to constitute a violation of section 632. The only remaining issue is whether section 637.2 entitles defendants to compensation.

With section 637.2 the Legislature provided two measures of monetary recovery for persons whose privacy has been invaded. If the plaintiff has suffered injuries akin to those for emotional distress, "i.e., anxiety, embarrassment, humiliation, shame, depression, feelings of powerlessness, anguish, etc.," these are "actual" damages which shall be trebled. But it is only the alternative, the specified recovery of $3,000,[9] which defendants claim.

Section 637.2 is fairly read as establishing that no violation of the privacy act is to go unpunished. Any invasion of privacy involves an affront to

[7]Other provisions of the privacy act expressly cover persons who "disclose" information or intercepted communications. (§§ 632.2 [confidential communications regarding sexual assault or domestic violence], 637 [telegraphic or telephonic communications], 637.6 [information from carpooling or ridesharing programs].) The Legislature also used a variety of equivalent verbs, such as "divulge" (§ 636.5 [police radio service communications]), "use" (§§ 631 [wiretaps], 637.1 [telegraphic or telephonic communications]), or "provide" (§ 637.5 [information from cable television corporation or system]).

[8]In light of our holding that a violation of section 632 does not require disclosure of a confidential communication, there is no need to address defendants' argument that plaintiff did in fact disclose the recording of the August 18th meeting by providing it to his attorney and to an audio enhancement technician.

[9]This lesser amount has been variously described as a "civil award" (*Ribas* v. *Clark* (1985) 38 Cal.3d 355, 365 [212 Cal.Rptr. 143, 696 P.2d 637, 49 A.L.R.4th 417]), a "statutory penalty" (*Rogers* v. *Ulrich* (1975) 52 Cal.App.3d 894, 896 [125 Cal.Rptr. 306]), and a "minimum damages award" (Comment, *Electronic Surveillance in California: A Study in State Legislative Control* (1969) 57 Cal.L.Rev. 1182, 1252).

human dignity which the Legislature could conclude is worth at least $3,000. The right to recover this statutory minimum accrued at the moment the privacy act was violated. (*Ribas* v. *Clark, supra,* 38 Cal.3d 355 at p. 365; see *McDaniel* v. *Atlanta Coca-Cola Bottling Co.* (Ga.App.1939) 2 S.E.2d 810, 817.)

Plaintiff, however, insists that no compensation can be awarded in the face of the trial court's finding that defendants suffered no injury. This finding cannot be viewed in isolation, inextricably linked as it is with the finding that plaintiff did not invade defendants' privacy because he did not publish the recording he made of the August 18 meeting. Insofar as plaintiff and the trial court proceed on the premise that plaintiff's act of recording the meeting would not constitute a violation of the privacy act unless and until he disclosed the recording to a third party, the preceding discussion has demonstrated that premise to be mistaken. By focusing on the absence of disclosure, plaintiff is in effect arguing that section 637.2 does not kick in until actual damages begin to be incurred. This would not only eviscerate much of the deterrent purpose (see Comment, *Electronic Surveillance in California, supra,* 57 Cal.L.Rev. at p. 1252, fn. 398)[10] and plain language of the privacy act, it would also contradict this statement from our Supreme Court: "In view of the manifest legislative purpose to accord every citizen's privacy the utmost sanctity, section 637.2 was intended to provide those who suffer an infringement of this aspect of their personal liberty a means of vindicating their right." (*Ribas* v. *Clark, supra,* 38 Cal.3d at p. 365.)

Plaintiff invaded defendants' privacy and violated the privacy act at the moment he began making his secret recording. No subsequent action or inaction is of consequence to this conclusion. Defendants' entitlement to recover $3,000 for plaintiff's invasion of their privacy at the August 18th meeting is therefore established as a matter of law.

That portion of the judgment directing that "neither defendant take anything from plaintiff by their respective cross-complaints" is modified to award each defendant $3,000 in accordance with section 637.2, subdivision (a)(1). As so modified, this portion of the judgment is affirmed. That portion of the judgment directing that "plaintiff take nothing by his complaint from either defendant" is reversed, and the cause is remanded to the trial court for

---

[10]The privacy act's goal of deterrence is shown not only by the double-barrelled criminal and civil penalties, but also by provisions mandating the exclusion of evidence obtained by wiretap or eavesdropping "in any judicial, administrative, legislative or other proceeding." (§§ 631, subd. (c), 632, subd. (d).)

further proceedings not inconsistent with this opinion. The parties shall bear their respective costs on these appeals.

Perley, J., and Reardon, J., concurred.

A petition for a rehearing was denied July 7, 1993, and the petition of appellants Robert Epstein et al., for review by the Supreme Court was denied September 15, 1993.